IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HEATHER TOLARO, an individual, ) <br> MICHAEL J. TOLARO, a minor, by his ) <br> mother, HEATHER TOLARO, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> INVITATION HOMES L.P., a Delaware ) <br> limited partnership, and THR PROPERTY ) <br> ILLINOIS L.P., a Delaware limited ) <br> partnership, ) <br> ) <br> Defendants. ) | Case No. 14-cv-00794 |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS THE COMPLAINT**

Plaintiffs, HEATHER TOLARO and MICHAEL TOLARO, by and through their undersigned attorneys, pursuant to Federal Rule of Civil Procedure ("Rule"), 12(b)(5) and (6), this Court's Orders and other governing law, and as and for their Combined Opposition to Defendants' Motions to Dismiss the Complaint, state as follows:

**INTRODUCTION**

In their Motions under Rule 12(b)(5) and (6)[1], Defendants posit several grounds upon which they seek dismissal of the Complaint. Each is defective legally and factually and the Court should deny the Motions.

Defendants initially betrayed a disingenuous motive at the outset with the filing of their Motions in which, despite the fact that they had already appeared in this case and chose to make substantive arguments under Rule 12(b), they nevertheless asked for dismissal on the ground that they were never served as no attempts at service had been made. While the Court addressed this

---

[1] Defendants, Invitation Homes L.P. and THR Property Illinois, L.P., each filed a separate motion to dismiss Plaintiffs' complaint ("Complaint" or "Compl."). (ECF Nos. 28 and 30, respectively.) Plaintiffs submit this combined response and for ease of reference refer to it collectively as the "Motions."

issue at the May 20, 2014 presentment of the Motions, it strains credibility that Defendants legitimately believed that they were entitled to dismissal under Rule 12(b)(5) under the circumstances that they argued in their Motions. In any event, on May 27, 2014, Plaintiffs filed waivers of service executed by Defendants. (ECF No. 35.)

Defendants' other arguments in support of dismissal fail as well. The primary argument on behalf of Invitation Homes L.P. ("IH") is that it did not directly enter a contract with Plaintiff Ms. Tolaro. However, Plaintiffs have alleged facts sufficient to assert that THR Property Illinois L.P. ("THR") was a mere shell of IH and that the two entities are liable as alter egos of one another. Defendants' other arguments run to the tautological: neither THR nor IH can be held liable for the conduct of the other because they are different entities. But viewing the allegations in the light most favorable to Plaintiffs, they are the same entity as alleged in the Complaint. And Defendants' arguments that the "noreliance" doctrine precludes liability for Defendants' fraudulent statements fails because there is nothing to suggest that Plaintiffs were in a position to understand that the clause pertained to conditions that developed after they entered into the lease, or that they were sophisticated enough to understand the meaning of the no-reliance clause. The Court should, therefore, deny the Motions.

**ARGUMENT**

A litigant must plead sufficient factual matter that, if accepted as true, will state a claim to relief that is plausible on its face. *See Alam v. Miller Brewing Co.,* 709 F.3d 662, 665 (7th Cir. 2013)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). A "complaint must include allegations that 'state a claim to relief that is plausible on its face'." The plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. A Court must accept all well-

pleaded factual allegations as true, and it must also view them in the light most favorable to the plaintiff. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).

Plaintiffs' Complaint clearly meets those standards on each count.

**I. PLAINTIFFS HAVE PROPERLY ALLEGED THAT INVITATION HOMES IS LIABLE FOR CLAIMS ARISING UNDER THE LEASE.**

Defendant, IH, argues that Plaintiffs do not have a breach of contract claim because IH was not a party to the lease agreement between the parties (the "Lease," a true and correct copy of which is attached to Exhibit "A" of the Complaint and made a part thereof). *See* IH's Supporting Memorandum at pp. 5-9. Defendants' argument fails because it misleadingly seeks to parse Plaintiffs' claims to suggest something other than what is in the Complaint.

**A. Plaintiffs Adequately Alleged Facts Supporting IH's Liability Under The Lease.**

Plaintiffs acknowledged in their Complaint that, while THR is the nominal party under the Lease, THR was simply a shell or alter ego of IH and that IH is the real party in interest. Specifically, Plaintiffs alleged that THR is nothing more than "a shell entity operated by IH from its Dallas, Texas headquarters." (Compl. at ¶ 5.)

Defendants' argument that claims against IH are based solely upon this "one-sentence allegation" (Supp. Mem. at p. 8) is incorrect. Plaintiffs alleged that IH made statements that induced Ms. Tolaro to execute the Lease, and made representations and took actions suggesting that it, and not THR, was the actual landlord. Specifically, Plaintiffs also allege that "[w]hile the Lease is itself facially between THR and Heather Tolaro, upon information and belief, THR is a shell-entity, owned and operated by IH and IH is the alter ego of THR. (Compl. at ¶ 10). Plaintiffs further alleged that (1) the "landlord" identified in the Lease had the same contact address as IH (*id.*); (2) an employee and agent of IH, represented to Ms. Tolaro

3

that the Subject Property had recently been completely renovated in a professional and workmanlike manner, that there had not been any flooding or water leakages in the basement of the Subject Property, and that during the term of the Lease, the Subject Property would be professionally managed by IH (Compl. at ¶ 11); (3) the contact information on the lease was that for IH (*id.* at ¶12); and (4) the listing that Ms. Tolaro observed was the multiple listing service that IH published. (*id.* at ¶ 13).

Defendant's argument that claims against IH are based upon a "one-sentence allegation" (Supp. Mem. at p. 8) are simply incorrect. Plaintiffs have alleged sufficient facts that, when viewed in the light most favorable to them, support a claim that THR was a shell and IH should be liable for claims arising under the Lease.

**B. IH's "Veil Piercing" Arguments Under Delaware Law Fail.**

Defendant IH also argues that, upon application of Delaware corporate law, Plaintiffs' claim will be difficult to prove. This argument fails because Defendant has not established a valid basis to apply Delaware law and because its argument addresses the weight to be given allegations in the Complaint – both of which are matters for the trier of fact to weigh and not a proper basis of a motion to dismiss.

Defendants assert, in a footnote, that "the law of an entity's state of organization controls efforts to pierce the corporate veil" (IH Supp. Mem. at p.7, n.2, citing to an unidentified Illinois Appellate Court district). But that is not a valid application of governing law. Where, as here, "a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S.

487, 496 (1941). Illinois, in turn, follows the "most significant contacts" test to choice-of-law disputes (*Westchester Fire Ins. Co. v. G. Heileman Brewing Co.,* 321 Ill. App. 3d 622, 747 N.E.2d 955, 961 (1st Dist. 2001)). In this case, there do not appear to be any significant contacts with Delaware and thus no apparent reason to apply Delaware law. Furthermore, a choice-of-law determination is not necessary unless there is a conflict of laws and the difference in the laws will affect the outcome of the case. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 879 N.E.2d 893, 898-99 (2007). While IH analyzes Delaware law at length in connection with its theories as to the likelihood of corporate veil piercing under Delaware substantive law (Supp. Mem. at p. 7), it identifies no valid basis to apply those laws.

In any event, however, Defendant's argument on this point fails because it is argument over whether facts alleged in the Complaint can give rise to alter ego liability under Delaware law. The question of whether Plaintiffs will prove facts sufficient to establish that IH is liable for THR's actions is a question for the trier of fact to determine and cannot support a motion to dismiss.

**II. IH'S "250 POINT INSPECTION" AND OTHER PROMISES AND STATEMENTS SUPPORT A CLAIM FOR BREACH OF CONTRACT CLAIM.**

Defendants also seek dismissal because statements IH made in its website entitled "Our Promise" (which includes a statement that "We inspect 250 items for quality in every home before you move in" (Compl. at ¶ 12)) do not, by themselves, create contracts. Those arguments, however, are based upon the incorrect notion that Plaintiffs allege that the "Promise" is, by itself, a contract. In reality, Plaintiffs' claim is that the "Promise" was both a term to the Lease, or an explanation of the meaning of the terms of the Lease that the parties executed as well as a false statement of material fact giving rise to their fraud claim.

5

Defendants argue at length about the elements for breach of contract (Supp. Mem. at p. 8-9) that are not at issue. Rather, Plaintiffs alleged that Ms. Tolaro reviewed the Promise and other IH representations about the property before entering into the Lease, and that those representations induced her to enter into the Lease. (Compl. at ¶¶ 12, 14, 16 & 22.) As such, Plaintiffs have alleged that those statements became and are terms of the Lease that Ms. Tolaro executed. As set forth in the Complaint, Defendants were shortly in breach of those representations because the property was infested with mold and not in a habitable condition.

Defendants' straw-man arguments that the Promise and other representations by Defendants do not, by themselves, support Plaintiffs' claims therefore fail.

### III. PLAINTIFFS PROPERLY ALLEGED THAT DEFENDANTS OWED THEM A DUTY OF CARE.

Defendants seek dismissal of Count II for negligence on the ground that neither IH nor THR owed Plaintiffs a duty of care. With respect to IH, this is derivative of its earlier argument that IH should not be held liable for the acts and omissions of THR on the grounds that it is an alter ego or THR and/or that THR is a mere shell company. Additionally, Defendants admit that the "owner" of property owes duties to occupants of the property. (Supp. Mem. at p. 10.)

Moreover, IH's argument that it owes Plaintiff no duty of care is undermined and contradicted by IH's correspondence to Plaintiffs dated April 16, 2014 ("April 16th Correspondence"), explaining the terms of the Lease. In the April 16th Correspondence, IH specifically warrants that "[IH] will maintain both the structure and habitability of your home in compliance with all applicable laws." (*See* April 16th Correspondence, Ex. 1 at 1.) As such, when viewing the allegations of the Complaint in the light most favorable to Plaintiffs, and after considering IH's April 16th Correspondence, IH is in fact the owner and lessor of the

6

property and owed Plaintiffs a duty of care, which Plaintiffs alleged that they breached.

Defendants also argue that the negligence claim should be dismissed because, under Illinois law, landlords are generally not liable for injuries on premises leased to and under the control of a tenant. (*Id*. at 8.) While this is the general rule, there is an exception. A landlord may be liable to a tenant for injuries on the premises leased to and under the control of a tenant:

> "1) where a latent defect exists at the time of the leasing, which defect is known or should have been known to the landlord in the exercise of reasonable care and which could not have been discovered upon a reasonable examination of the premises by the tenant; 2) where the landlord fraudulently conceals from the tenant a known, dangerous condition; 3) where the defect causing the harm, in law, amounts to a nuisance; and 4) where the landlord promises the tenant to repair the premises at the time of the leasing."

*Thorson v. Aronson*, 122 Ill. App. 2d 156, 160 (2d Dist. 1970).

In this case, Plaintiffs alleged that 1) Defendants were aware that there had been extensive flooding and water damage to the basement of the property (Compl. at ¶ 28); 2) an employee and agent of IH represented that there had not been any flooding or water leakages in the basement of the property (*Id*. at ¶ 11); and 3) that because Defendants were aware of said extensive flooding and water damage, Defendants "knew or should have known that there was a significant risk that the Subject Property had a toxic mold infestation that posed a significant risk" to Plaintiffs (*Id*. at ¶ 28.). Additionally, as evidenced by the April 16th Correspondence, IH clearly promised to repair and maintain the premises during the term of the Lease. Therefore, not only have Plaintiffs adequately alleged a negligence claim against Defendants, Plaintiffs had adequately pled the exception to a landlord's liability for a leased premises.

IV. **PLAINTIFFS PROPERLY ALLEGED A CLAIM FOR FRAUD.**

Defendants in their final argument seek dismissal of Count III for fraud. Plaintiffs have, however, fully complied with the requirements of Rule 9(b) and Count III contains sufficient specificity to allege fraud against IH and THR.

**A. The Fraudulent Statements Are Pled With Specificity.**

In their lengthy argument (Supp. Mem. at pp. 10-14), Defendants rely upon the device of mischaracterizing Plaintiffs' allegations in a fashion that supports their argument. First, they argue that the allegations are vague because they contain phrases such as "professional and workmanlike" and "professionally managed." (Supp. Mem. at pp. 11-12.) That argument is highly disingenuous because they omit the following allegations incorporated into Count III: "On or about September 19, 2013, Anthony Zammitt, and employee and agent of IH, represented to Heather that the Subject Property had recently been completely renovated in a professional and workmanlike manner, that there had not been any flooding or water leakages in the basement of the Subject Property, and that during the term of the Lease, the Subject Property would be professionally managed by IH." (*See* Compl. at ¶¶ 11 & 33.)

Plaintiffs alleged facts showing that "prior to September 27, 2013, the basement of the Subject Property had sustained substantial flooding and water damage precipitating the growth of toxic mold, neither IH nor THR had tested for mold prior to Heather and Michael moving into the Subject Property and the renovations to the Subject Property had not been performed by IH in a professional and workmanlike manner." (Compl. at ¶ 35.) And that "[t]he representations referenced in Paragraphs 33 and 34 above were false and IH and THR knew that they were false at the time IH and THR made such representations to Heather." (*Id.* at ¶ 36.)

Defendants' device of excluding very specific factual allegations and then complaining that Count III is vague fails. Plaintiffs have pled with specificity the circumstances of the

8

fraudulent statements: who said them, what the statements were and when they were made. Count III, thus, fully complies with Rule 9(b).

**B. The Statements Were Sufficiently Specific.**

Defendants' argument that the statements giving rise to Count III were insufficiently specific also fails because it comprises argument over factual matters which is an impermissible ground to obtain dismissal.

As set forth above, Plaintiffs have alleged that Defendants knew that flooding or water leakages had occurred in the basement of the unit in which Plaintiffs reside (and would continue unchecked to occur) and that their statements to the contrary were false. Furthermore, Plaintiffs allege that statements that IH would maintain the premises in a professional and workmanlike manner were false. It is a matter for the trier of fact to determine whether Defendants knew or should have known that the flooding and infiltration of water into the residence's basement caused or materially contributed to the mold infestation that caused Plaintiffs' damages. Defendants' argument that the statements are insufficiently specific therefore fails.

**C. Plaintiffs Properly Alleged Reliance.**

Defendants' final argument in support of dismissal of Count III is that a "no-reliance" clause bars Plaintiffs' claims. (Supp. Mem. at 13-14.) This argument also fails. Defendants rely upon a Northern District of Illinois case law holding that "[t]he Seventh Circuit has held that no-reliance clauses are enforceable in Illinois." (Supp. Mem. at p. 13, citing *Vanco US, LLC v. Brink's, Inc.*, No. 09 C 6416, 2010 U.S. Dist. LEXIS 133997 (N.D. Ill. Dec. 14, 2010).)

This argument fails as well because, even if the clause cited at Paragraph 12 of the Lease did properly comprise a "noreliance clause," it would not bar Plaintiffs' claims for two

9

reasons. First, the clause as Defendants admit relates to the "present physical condition" of the property. Plaintiffs have not alleged that there was standing floodwater in the basement of the home at the time of the Lease execution. As such, the "present physical condition" of the premises as it was within Plaintiffs' ability to observe it may have been acceptable.

Second, the Seventh Circuit has also appeared to limit the applicability of no-reliance clauses to those situations where the signatory knew what she was doing. The Seventh Circuit in *Extra Equipamentos Exportacao Ltda. v. Case Corp.*, 541 F.3d 719 (7th Cir. 2008) indicated that "in the trade, no-reliance clauses are called 'big boy' clauses (as in 'we're big boys and can look after ourselves'). But if someone who is *not* a big boy — indeed is not even represented by counsel — signs a big-boy clause, there can be a problem, and this has led some courts to require, before such a clause can be enforced, an inquiry into the circumstances of its negotiation, to make sure that the signatory knew what he was doing." *Id.*, 541 F.3d at 725. As such, Defendants' reliance upon the "noreliance clause" in connection with its motion to dismiss is inappropriate, because its application rests upon the question of whether Ms. Tolaro and her son are "big boys" in connection with the impact of flooding seepage and its impact on the future mold infestation of the property. The presence of the clause regarding the "present physical condition" of the property therefore cannot form a valid basis to dismiss the Complaint at this stage in the proceeding.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny the Motions filed by Defendants, and to grant any and all further relief that the Court deems to be reasonable and appropriate under the circumstances. If the Court does grant the respective Motions, Plaintiff respectfully requests the opportunity to amend the Complaint.

Respectfully submitted,

**HEATHER TOLARO and
MICHAEL TOLARO,**
Plaintiffs

By:   /s/ Daniel J. Voelker, Esq.
          One of Their Attorneys

Daniel J. Voelker, Esq.
Olga S. Dmytriyeva, Esq.
VOELKER LITIGATION GROUP
311 West Superior Street, Suite 500
Chicago, Illinois 60654
T: (312) 870-5430
F: (312) 870-5431
dvoelker@voelkerlitigationgroup.com
olga@voelkerlitigationgroup.com

Paul Duffy, Esq.
DUFFY LAW GROUP
321 N. Clark Street, 5th Floor
Chicago, Illinois 60654
T: (312) 952-6136
pduffy@pduffygroup.com

Dated: June 10, 2014

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on June 10, 2014, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).

                                                      /s/ Daniel J. Voelker, Esq.