**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEATHER TOLARO and MICHAEL J. TOLARO, *by his mother, Heather Tolaro*,<br><br>Plaintiffs,<br>v.<br><br>Invitation Homes L.P. and THR Property Illinois L.P.,<br><br>Defendants. | No. 1:14-cv-00794<br><br>Judge Andrea R. Wood |

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF THEIR
MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs' Complaint in this case advances claims against Defendants THR Property Illinois L.P. ("THR") and Invitation Homes L.P. ("Invitation Homes") for breach of contract, negligence and fraud, all in connection with Plaintiffs' lease of a home from THR on Chicago's northwest side (the "Subject Property"). All of Plaintiffs' claims should be dismissed.

Plaintiffs contract claims fail because Plaintiffs have never identified any provision of the written lease agreement with THR (the "Lease Agreement") that was breached or any contract between them and Invitation Homes. Plaintiffs' negligence claims fail because they have not and cannot allege any duty on the part of Defendants or any latent defect in the home of which Plaintiffs were unaware prior to signing the Lease Agreement and moving into the Subject Property that might create such a duty. And Plaintiffs' fraud claims fail because the Complaint and the Lease Agreement make clear that Plaintiffs could never establish justifiable reliance on any statement made by Defendants.

Instead, the Complaint and Lease Agreement demonstrate that Plaintiffs, one of whom is a licensed real estate agent, entered into the Lease Agreement aware of the very facts they now

allege were hidden from them. These allegations demonstrate that there was no breach of contract, negligence, fraud or any other actionable claim. Instead, with the benefit of hindsight, Plaintiffs now seek a better bargain than the one they made. But that is not a proper basis for this, or any other, lawsuit. For the following reasons, in addition to the reasons stated in Defendants' Motions to Dismiss, Plaintiffs' Complaint should be dismissed in its entirety.

## ARGUMENT

**I.  Invitation Homes Cannot Be Conflated With THR and Bears No Liability on the Lease Agreement or as Owner or Lessor of the Subject Property.**

Plaintiffs' breach of contract and negligence claims against Invitation Homes rest entirely on their unsupported theory that THR is a "shell-entity, owned and operated by Invitation Homes." (Compl. ¶¶ 5, 10.) For Plaintiffs admit (as they must) in both their Complaint and their Response Brief that Invitation Homes is not a party to the Lease Agreement. (*See* Compl. ¶¶ 9-10; Resp. Br. at 3.) Thus, Invitation Homes owes no duties to Plaintiffs in contract or common law.

In an effort to resurrect their breach and negligence claims against Invitation Homes, Plaintiffs in their Response Brief again try to conflate Invitation Homes with THR based on a one-sentence conclusory allegation in the Complaint that THR is "is a shell-entity, owned and operated by [Invitation Homes] and [Invitation Homes] is the alter ego of THR." (Compl. ¶ 10; *see also* Compl. ¶ 5 ("THR is, upon information and belief, a shell-entity, owned and operated by [Invitation Homes] from its Dallas, Texas headquarters"); Resp. at 3-4.) This allegation is utterly insufficient to hold Invitation Homes liable for alleged breaches and negligence by THR, the lessor and owner of the Subject Property.

First, Plaintiffs' choice of law analysis is deeply flawed. (*See* Resp. at 4-5.) "Corporate veil claims are analyzed under the state law." *Prevue Pet Prods. v. Targeted Media for Med.,*

*Inc.*, No. 02 C 17196, 2003 U.S. Dist. LEXIS 17196, at *15 (N.D. Ill. Sept. 26, 2003). "To determine which state's law applies," a court sitting in diversity "consults the forum state's choice of law principles." *Id.* "Illinois uses the 'internal affairs doctrine' as its choice-of-law principle when deciding matters of corporate governance. . . . Under this doctrine, the substantive law of the state of incorporation governs issues involving internal corporate affairs." *Id.* at *15-16 (citations omitted). Because both Invitation Homes and THR are organized and existing in Delaware (Compl. ¶¶ 4, 5), Delaware law governs Plaintiffs' piercing challenge. *See id.* at *16.[1]

Tellingly, Plaintiffs do not and cannot point to a single case decided under Delaware (or Illinois) law under which their veil piercing allegations — that THR was a shell entity; that THR and Invitation Homes shared office space; and that THR and Invitation Homes shared common agents, namely Anthony Zammitt (*see* Compl. ¶¶ 10-12; Resp. at 3-4) — would be sufficient to survive a motion to dismiss. To the contrary, "[i]t is well-established that wholly-owned subsidiaries may share officers, directors and employees with their parent, without requiring the court to infer that the subsidiary was a mere instrumentality for the parent and without requiring the court to conclude that those officers and directors were not functioning properly." *In re BH S&B Holdings, LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) (applying Delaware law to dismiss veil piercing claim on 12(b)(6) motion). Thus, sharing of agents, even when coupled with a sharing of "common office space, addresses, and telephone numbers," is insufficient to pierce the corporate veil. *In re Foxmeyer Corp.*, 290 B.R. 229, 245-46 (Bankr. D. Del. 2003).

---

[1] Though Delaware law controls Plaintiffs' piercing efforts, Plaintiffs' attempt to hold Invitation Homes responsible as owner and lessor also would fail if Illinois law governed. Under Illinois law, "before the separate corporate identify of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud and promote injustice." *Main Bank of Chi. v. Baker*, 86 Ill. 2d 188, 204-05 (Ill. 1981).

Plaintiffs' allegations are simply not enough to make "the question of whether Plaintiffs will prove facts sufficient to establish that [Invitation Homes] is liable for THR's actions [] a question for the trier of fact to determine." (Resp. Br. at 5.) Plaintiffs' breach of contract and negligence claims fail against Invitation Homes and should therefore be dismissed.

II.  **Plaintiffs' Breach Claims Fail as to Both Defendants Because Plaintiffs Do Not Allege Any Provisions of an Existing Contract Were Breached.**

All parties agree that the Lease Agreement, which Plaintiffs attached to the Complaint as Exhibit B, is the only existing contract in this case. (*See* Resp. at 5-6.) Setting aside that Plaintiffs cannot mount a breach of contract claim against Invitation Homes, a non-party to the Lease Agreement, Plaintiffs' breach of contract claims against both Defendants fail for the simple reason that Plaintiffs do not allege that any provision of the Lease Agreement was breached. No action for breach of contract lies absent a provision of the contract claimed to have been breached. *See, e.g.*, *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 856-57 (N.D. Ill. 2008) (dismissing with prejudice Defendants' final basis for their breach of contract claim because no provision of the contract, express or implied, required Plaintiff to take the action Defendants claimed Plaintiff refused to take).

In apparent recognition of this fatal deficiency, Plaintiffs use a back door approach to their breach count and claim that representations contained on Invitation Homes' website and oral representations allegedly made prior to Ms. Tolaro's entrance into the Lease Agreement somehow became part of the Lease Agreement. (*See* Resp. Br. at 6.) Plaintiffs admit that statements made apart from the Lease Agreement, including a statement on Invitation Homes' website, "do not, by themselves, create contracts." (*See id.* at 5) Yet Plaintiffs argue such representations are actionable in contract nonetheless because they "became and are terms of the Lease [Agreement] that Ms. Tolaro executed." (*See id.* at 5-6.)

A review of the actual terms of the Lease Agreement slams shut Plaintiffs' back door efforts to resuscitate their deficient breach of contract claim. Plaintiffs admit Ms. Tolaro entered into the Lease Agreement *after* reviewing Invitation Homes' website and meeting with Mr. Zammitt. (*See* Resp. at 6.) And the Lease Agreement cannot be more clear that all terms are incorporated within it, and that "neither the Landlord nor Landlord's agent have made any representations or promises concerning the physical condition of the property except those specifically set forth in this Lease." (*See* Lease Agreement ¶ 12 (Ex. B to Compl.).) It is well settled in Illinois that "an integration clause prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during the negotiations that eventuated in the signing of a contract but that they had not written into the contract itself." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). Thus, "[P]laintiffs' breach of contract cause of action based upon the contention that representations made by the defendants prior to the execution of the contract dissuaded them from obtaining a professional mold inspection of the basement [is] barred by the contract's specific disclaimer . . . [] and by the doctrine of merger." *Kagan v. Freedman*, 55 A.D. 3d 558, 559 (N.Y. App. Div. 2008) (where "real property purchase contract contained a specific disclaimer that the contract was executed in reliance upon contrary oral representations as to the condition of the property"). Count II should therefore be dismissed with prejudice.

**III.    Plaintiffs' Negligence Claims Should be Dismissed Because There Was No Undisclosed Latent Defect.**

As an initial matter, for the reasons identified in Section I, *supra*, Invitation Homes is not the alter ego of THR, and so cannot be liable for alleged negligence toward Plaintiffs because as neither the lessor nor owner of the Subject Property, it owes them no duty. (*See* Ex. B to Compl.

at page 1 (identifying the Landlord as "THR Property Illinois, LP, a Delaware Limited Partnership").)

The distinction is ultimately immaterial, however, because neither THR nor Invitation Homes can be liable in negligence to Ms. Tolaro. As Plaintiffs acknowledge, the "general rule" in Illinois is that "landlords are [] not liable for injuries on premises leased to and under the control of a tenant." (Resp. at 7.) Plaintiffs for the first time in their Response Brief try to fit this case into a narrow exception to that rule that applies "where a latent defect exists at the time of leasing, which defect is known or should have been known to the landlord in the exercise of reasonable care and *which could not have been discovered upon a reasonable examination of the premises by the tenant*." (*Id.* (emphasis added).) But the Lease Agreement itself belies Plaintiffs' argument.

The Lease Agreement incorporates and attaches an exhibit entitled "Rental Property Condition List," which is attached hereto as Exhibit A. (*See* Exhibit A (Rental Property Condition List); *see also* Exhibit B to Compl. 12 (explaining that "Tenant has examined the residence and completed the Rental Property Condition List attached hereto").)[2] As part of her inspection of the Subject Property before moving in, Ms. Tolaro, a licensed real estate agent

---

[2] Curiously, while Plaintiffs attached the body of the Lease Agreement to their Complaint (*see* Exhibit B to Compl.), they failed to attach this attachment to the Lease Agreement, which the Lease Agreement itself makes clear is both a part of and attachment to it. Defendants are therefore entitled to present the Court with the complete Lease Agreement, which is central to Plaintiffs' claims and which is both referred to in and attached to the Complaint. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (recognizing that a court may consider documents attached to a motion to dismiss under 12(b)(6), including contracts and supplements to same, which are "central to the plaintiffs' claims" and "to which the Complaint [] refer[s]" without converting the 12(b)(6) motion to a motion for summary judgment); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (district court properly considered contract agreement attached to motion to dismiss where the plaintiff repeatedly referenced the agreement and it was the source of his claimed property interest in his employment).

presumably versed in inspecting homes[3], filled out the Rental Property Condition List and noted any conditions that existed on the Subject Property. (*See id.*) In that Rental Property Condition List, which is part of the Lease Agreement, Ms. Tolaro specifically noted in the "Move In Comments" that she observed "water coming into basement." (*See* Exhibit A at 2.) Thus, what Plaintiffs now claim to be a "latent defect" in the Subject Property was a condition which Ms. Tolaro could reasonably have discovered — *and did in fact discover* — "upon a reasonable examination of the premises," thereby putting her on equal notice with THR of the "risk that the Subject Property had a toxic mold infestation." (*See* Compl. ¶ 28; Resp. at 7.) Ms. Tolaro's actual knowledge of the condition of which Plaintiffs now complain removes this case from the narrow exception on which Plaintiffs rely and defeats their negligence claim.

### IV. Plaintiffs' Fraud Claims Should Be Dismissed Because Plaintiffs Did Not Reasonably Rely on Allegedly False Representations Made by Defendants.

In their Response Brief, Plaintiffs appear to (correctly) abandon certain non-actionable representations as support for their fraud claims, including statements that the Subject Property had been renovated in a "professional and workmanlike manner," would be "professionally managed" and had an "awesome rehab," as well as statements contained on Invitation Homes' website relating to its alleged "Peace of Mind Promise." (*See* Compl. ¶¶ 11-14; Resp. at 8.) As discussed in Defendants' Opening Briefs, none of these representations can form the basis for fraud, as they are "too vague and general" to amount to anything but mere puffery. (*See* Invitation Homes' Mot. to Dismiss at 12 (citing *Lefebvre Intergraphics v. Sanden Mach.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 2006); *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 U.S. Dist.

---

[3] Ms. Tolaro is a realtor licensed in the state of Illinois (license no. 475157361). The Court is permitted to take judicial notice of her status as an active licensed realtor, which can be confirmed through the Illinois Division of Professional Regulation (attached as Exhibit B), at any stage in the proceedings. *See* Fed. R. Civ. P. 201(b), (d).

LEXIS 19650, at *11-12 (N.D. Ill. Mar. 20, 2007)); THR Mot. to Dismiss at 12 (incorporating those arguments set forth in Invitation Homes' Motion to Dismiss).)

Plaintiffs' fraud claims are thus reduced to statements allegedly made by Anthony Zammitt, an alleged agent of Invitation Homes, that "there had not been any flooding or water leakages in the basement of the Subject Property." (*See* Compl. at ¶¶ 11, 33; Resp. Br. at 8.) This alleged misrepresentation also fails as a basis for Plaintiffs' fraud claims, as Plaintiffs cannot establish that they justifiably relied on it.

First, when Ms. Tolaro entered into the Lease Agreement, she specifically disclaimed that "Landlord []or Landlord's agent have made any representations or promises concerning the physical condition except those specifically set forth in the Lease." (*See* Ex. B to Compl. ¶ 12.) This explicit "no reliance" clause bars Plaintiffs from claiming reliance on oral representations concerning the Subject Property made prior to her entrance into the Lease Agreement. *Vanco US, LLC v. Brink's, Inc.*, No. 09 C 6416, 2010 U.S. Dist. LEXIS 133997, at *10-11 ("[B]ecause the no-reliance clause is enforceable, Defendant cannot show that it relied on the statements made by Plaintiff before the Agreement was signed. Therefore, statements made before the Agreement was executed are not actionable as fraud."); *see also Kagan v. Freedman*, 55 A.D. 3d 558, 559 (N.Y. App. Div. 2008) (plaintiffs failed to raise a triable issue of fact with respect to their contention that defendants actively concealed the alleged presence of mold in the basement where contract contained a specific disclaimer that the contract was executed in reliance upon contrary oral representations as to the condition of the property).

Plaintiffs claim that Ms. Tolaro is not a sophisticated party, and therefore an inquiry into the "circumstances of [] negotiation" of the Lease Agreement is required to determine whether Ms. Tolaro's reliance was justifiable, as needed to prove actionable fraud. (*See* Resp. at 10.)

But even the most superficial inquiry based solely on the allegations of the Complaint and the Lease Agreement reveals the lack of justifiable reliance on Mr. Zammitt's alleged representations. As indicated above, prior to moving into the Subject Property, Ms. Tolaro filled out a Rental Property Condition List, in which she noted "water coming into basement." (*See* Exhibit A.) Ms. Tolaro cannot claim to have justifiably relied on the alleged representations that "there had not been any flooding or water leakages in the basement of the Subject Property" when she specifically indicated she observed that very condition. *See, e.g.*, *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 730 n.40 (7th Cir. 1979) ("We do not suggest that a plaintiff with knowledge of the fraud may nevertheless claim justifiable reliance just because it does not know the exact dollar amount involved or every intricate detail of the fraud."). Indeed, when faced with this very situation in the context of residential property purchase agreement, the First District Court of Appeals rejected the Buyers' fraud claim as against as it related to water damage in the basement "because the Buyers' could not have justifiably relied on 'misrepresentations' they already knew about." *Becker v. Scherer*, No. 1-12-2331, 2013 Ill. App. Unpub. LEXIS 2775, at *12, *28 (Ill. App. Ct., 1st Dist., Dec. 5, 2013) (noting also that the district court dismissed Buyers' fraud counts with respect to alleged defects in the roof "because of the lack of justifiable reliance by the Buyers, since they were aware of these issues when finalizing the contract at closing").

## CONCLUSION

For these reasons, and for the reasons set forth in Defendants' Motions to Dismiss (Docket Nos. 28 and 30), Plaintiffs' Complaint should be dismissed in its entirety.

| | |
|---|---|
| Dated:  June 24, 2014 | Respectfully Submitted |
| | s/ *Elizabeth J. Marino* |
| | Morgan R. Hirst<br>Elizabeth J. Marino<br>Jones Day<br>77 W. Wacker Drive<br>Chicago, Illinois  60601-1692<br> (312) 782-3939<br> (312) 782-8585 facsimile<br>mhirst@jonesday.com<br>ejmarino@jonesday.com |
| | Counsel for Defendants<br>INVITATION HOMES L.P. and<br>THR PROPERTY ILLINOIS L.P. |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2014, I electronically filed the foregoing **DEFENDANTS' COMBINED REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record at their e-mail address on file with the Court:

s/ *Elizabeth J. Marino*

Attorney for Defendants
INVITATION HOMES L.P. and
THR PROPERTY ILLINOIS L.P.